UNITED STATES, Appellee,

v.

**David R. WETHERBEE, Staff Sergeant, U.S. Air Force, Appellant.**

No. 38,071.

ACM 22512.

U. S. Court of Military Appeals.

March 9, 1981.

For Appellant: *Major Marc G. Denkinger* (argued); *Colonel Larry G. Stephens, Major Robert G. Gibson, Jr.* (on brief).

For Appellee: *Captain Richard O. Ely, II* (argued); *Colonel James P. Porter* (on brief); *Mr. P. Michael Cunningham* (Legal Intern).

## OPINION OF THE COURT

COOK, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial, consisting of members, of larceny (2 specifications), in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. We granted review to determine if documents used to prove the larcenies were properly admitted into evidence.

The Government asserted at trial that appellant was responsible for the collection of cash receipts from the dining facilities at Holloman Air Force Base, New Mexico, and that he collected greater amounts at various times than were forwarded to the base Finance Office. These allegations required the introduction of numerous standard forms designed to verify the flow of cash from its payment by a diner to the cashier

of a dining facility until its receipt by the Finance Office.

Technical Sergeant Andress testified that he was assigned to the Food Service Staff Office at Holloman in October 1978. His duties included overseeing the accounting processes, and he had been in the "Food Service career field" for approximately 17 years. He detailed the use of each form as follows: Air Force Form 79 was used to record each purchase of a meal by an individual on separate rations; Holloman Air Force Base Form 49 was used at the base to record the purchase of a box lunch. Recordations of box-lunch transactions on Holloman Form 49 were transferred to Air Force Form 2039. Air Force Form 463 was used to record the purchase of flight meals. Air Force Form 1339 was used to record the receipt of meals by nonpaying customers. Information on the specified forms was, in turn, consolidated on a DD Form 1131 by the Dining Hall Supervisor to reflect the total cash receipts by a dining facility for a specified period, usually one day, except for weekends. The money, DD Form 1131, and the support forms would be taken to the Food Service Staff Office where the Food Service Accountant would prepare another DD Form 1131 to reflect the total cash receipts at the base. That DD Form 1131 and the cash would then be taken to the Finance Office. Andress stated that he was not present when the documents in question were prepared, having arrived at Holloman after the larcenies occurred. He also noted that there was some indication that the people responsible for the documentation did not strictly comply with AFM 146–7 because the Food Service Officer did not verify the documents.

Airman Jenny testified that he was the Food Service Accountant from early October 1977, to June 16, 1978. He replaced the appellant, who gave him some training on the first day he assumed the position. He stated that his duties required him to verify the DD Form 1131 which was collected from the dining facility against the support documents. He then prepared his own DD Form 1131 which was taken to the Finance Office with the money. The money would then be recounted and the form stamped with the date and amount of money collected. A copy of the stamped DD Form 1131 and the "backup documents" would be kept in the Food Service Staff Office. He identified appellant's signature on most of the documents in question. Airman Jenny acknowledged that he had been convicted of the larceny of money which was collected by the Food Service Staff Office.

Technical Sergeant Burton testified that he was a Dining Hall Supervisor while appellant was the Food Service Accountant. He asserted that normally early in the morning he would check the various forms, including DD Form 1131, which reflected the amount of business conducted on the previous day. Appellant usually collected the money and the various forms involved. He subsequently learned that this procedure was incorrect. Apparently the Dining Hall Supervisor was supposed to take the money and forms to the Food Service Staff Office.

The Government asserted that the thefts were accomplished because the DD Form 1131, which was submitted to the Finance Office, understated the amount of money that was actually collected by the Food Service Staff Office. As only the DD Form 1131 was submitted to Finance, there was no observable inconsistency until an audit compared these 1131s with the Air Force Forms 79, 463, and 2039. This comparison reflected that a greater amount of money had been collected than was reported and forwarded to the Finance Office.

Appellant was convicted of the larceny of various funds which were collected by the Food Service Staff Office from the periods July 14—October 12, 1977, and February 27—March 3, 1978. Appellant argues on appeal, as he did at trial, that the forms were not properly authenticated because the procedures utilized did not strictly comply with AFM 146–7, and the authenticating witnesses did not sufficiently establish their authenticity. We disagree.

Initially, the Government argued that some of the documents were not hearsay because they were used only to show that

such documents were made by the appellant and their truthfulness was not an issue. *See* para. 139*a*, Manual for Courts-Martial, United States, 1969 (Revised edition); Mil. R.Evid. 801(c). However, the accuracy of the 1131s was compared with the support documents. The discrepancies revealed by this comparison tended to show that the shortages were caused by the appellant. As we view the evidence, the documents were used to pr ive more than the operative fact of their making. In any event, the parties do not question that the support documents were used for purposes other than the fact of their making.

■ We note that the parties at trial litigated the issue of whether the documents qualified as business entries. Thus, we pass over the question of whether the records involved in the present case, which were required by AFM 146–7, qualified as official records. Appellant's objection that the records cannot qualify as business entries because the personnel involved did not strictly comply with AFM 146–7 must be rejected. In *United States v. Wilson*, 1 M.J. 325 (C.M.A.1976), the Court held that the determinative factor was the procedures employed by a particular enterprise rather than a more general industry standard. Here, the procedures employed by Holloman were the determinative factors. While a failure to follow the procedure mandated by the United States Air Force may have contributed to the thefts, the individual base had established its own business procedures. In any event, the alleged deviation from AFM 146–7 does not require rejection of the documents under the facts of this case. Indeed, appellant himself followed the procedures and the failure of his superior to verify the documents allowed appellant to continue his criminal venture. *See United States v. Pettiford*, 27 C.M.R. 617 (A.B.R.1958).

■ Appellant further submits that Sergeant Andress could not authenticate the records because he was assigned to the Food Service Staff Office after the documents in question were prepared. However, this witness was familiar with the procedures followed by the Food Service Staff Office both before and after his arrival at Holloman. The parties do not question that Andress was aware that the records were maintained by the Food Service Staff Office. Additionally Airman Jenny explained the procedures followed by the Food Service Accountant as they were explained to him by the appellant. Appellant, citing *United States v. Wilson, supra*, asserts that Jenny's testimony cannot be accepted because he had an interest in the case arising from his own criminal misconduct. We disagree. Here, unlike the witness in *Wilson*, the witness was directly concerned with the enterprise in question. While his own misconduct may have been a matter affecting his credibility, it did not disqualify him as a witness possessed of the requisite knowledge of the operations of the Food Service Staff Office. Finally, Sergeant Burton's testimony established the procedures employed to create the support documents that were used to prepare the DD Form 1131 by the Food Service Accountant while the appellant held that position.

Under the circumstances, we hold that the evidence adequately established that the documents were made in the regular course of business and it was the regular course of business to make the documents. Accordingly, the documents were properly admitted into evidence.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.