Marcus M. PATTERSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 08–CF–876, 10–CO–1611.

District of Columbia Court of Appeals.

Oct. 11, 2012.

BEFORE: WASHINGTON, Chief Judge; GLICKMAN,* FISHER, BLACKBURNE–RIGSBY, THOMPSON,* OBERLY, BECKWITH, and EASTERLY, Associate Judges; NEBEKER,* Senior Judge.

## ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing or rehearing *en banc*, the amicus curiae's memorandum in support of appellant's petition, and the appellee's response thereto, it is

ORDERED by the merits division * that the appellant's petition for rehearing is granted and the opinion of the court of February 16, 2012, 37 A.3d 230 (D.C.2012), is amended as follows:

The last sentence of the first paragraph of the majority opinion is amended to say: "We conclude that appellant's claims do not entitle him to relief, and, accordingly, we affirm his convictions." It is

FURTHER ORDERED that Part II. A.1 of the majority opinion is stricken and replaced with the following:

Prior to the beginning of the first of his three trials, appellant filed a motion seeking leave to introduce expert testimony of Dr. Henry Shulman, a professor of psychology at Ohio State University, "on psychological factors of memory and perception that may affect the accuracy of eyewitness identifications." The government filed a "motion in opposition" to the expert testimony arguing that the victim's identification was corroborated by the facts that appellant was arrested in a vehicle containing some of Ms. Kuczynska's stolen property, he was seen on the Giant store surveillance video attempting to pass checks in Ms. Kuczynska's name, and he sent police to the motel room where more of Ms. Kuczynska's stolen property was located.

The trial judge denied the motion, distinguishing appellant's case from past cases where he had admitted such testimony. For the court, the key distinction was that cases where the court had admitted expert testimony in the past were ones where there was little corroborating evidence; in those cases, the court reasoned, expert testimony on identification "would [have been] helpful to the [jury]" on cross-racial identification. In appellant's case, the court concluded:

There is abundant corroborative evidence in this case with regard to demonstrating Mr. Patterson's involvement in these offenses. . . . In a case like this I think that weighing the probative value versus prejudice having an expert testify in a case like this would put an unnecessary [indiscernible] on his opinion testimony and I'm not prepared to admit testimony in this type of case.

Moreover, the trial court added, the standard jury instruction would provide the jury "with all the guidance it needs to be able to determine the accuracy and reliability of eyewitness identification." Finally, the court expressed the view that the witness would be impermissibly involved in the jury reaching its "ultimate opinion about the reliability of the identification and give undue weight to [the expert's] opinion in the narrow area of cross racial identification." During appellant's second trial, presided over by a different judge, appellant renewed his request to introduce expert testimony, but that trial judge, too, denied the motion, stating that it had no

reason "to revisit what was a ... perfectly reasonable discretionary decision by [the previous trial judge]."[1]

Appellant contends that the first trial court erred when it refused to permit appellant to present an expert witness on identification testimony. Appellant argues that the first trial court failed to exercise its discretion by basing its decision on corroborative evidence, which is not part of the *Dyas* test. *See Dyas v. United States,* 376 A.2d 827, 832 (D.C.1977).[2] He also asserts that the second trial court's acceptance of the ruling of the first trial court was erroneous because some of the "corroborative evidence [relied upon by the first trial judge] was different than that which the [second trial judge] based his decision to exclude [the expert testimony]."

We need not decide whether the trial court erred by basing its decision to exclude the expert testimony on the existence of evidence corroborating the identification of appellant, without conducting a *Dyas* inquiry, for we are satisfied that the asserted error in doing so was harmless under *Kotteakos v. United States* in light of the corroborative evidence. 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *Accord, Benn v. United States (Benn II),* 978 A.2d 1257, 1283 (D.C.2009) ("In a case grounded on eyewitness identifications of a stranger, *without other corroborating evidence,* and in which the defense depends entirely upon demonstrating that the identifying witnesses are not as reliable as they believe themselves to be, to preclude the defendant from presenting the scientific testimony of a qualified expert on research that is generally accepted and not known to lay jurors to prove this point is not harmless under *Kotteakos....*" (emphasis added)). The corroborative evidence included Ms. Kuczynska's description of the perpetrator matching appellant and not Jarwon Scott;[3] Ms. Kuczynska's declining to identify a suspect as the perpetrator in a show-up immediately after the crime; her identification of appellant in the photo array; and the fact that appellant's effort to put the actual robbery at the hands of another in the gang would not have established actual innocence, but rather as one who shared in the spoils of the robbery by receiving the stolen property. In addition, Ms. Kuczynska had no opportunity to view the appellant other than during the crime, during the only photo array, and during trial. Furthermore, the victim's depiction of the gun in a sketch immediately after the crime matched the gun recovered by the police in the motel. All of this justifies a harmless-

---

1. As the judge in the third trial was the same judge who presided over the second trial, appellant did not renew the motion before the third trial began, and the government does not argue that appellant needed to renew the motion in order to preserve the claim for this appeal. For purposes of this appeal we treat the claim as preserved with this caveat: the first trial judge left this matter open for reconsideration if "there isn't as much corroboration as [he] initially thought."

2. In *Dyas,* this court determined that in order to admit expert testimony: (1) the subject matter must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman; (2) the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or interference will probably aid the trier in his search for truth; and (3) expert testimony is inadmissible if the state of the pertinent art of scientific knowledge does not permit a reasonable opinion to be asserted even by an expert. *See Dyas, supra,* 376 A.2d at 832.

3. As discussed *infra,* appellant also asserts that Scott took responsibility for both crimes. As repeatedly pointed out at trial, however, appellant and Scott look almost nothing alike. Scott was a young-looking, short, beardless man with a dreadlocks hairstyle, and was 5'5". Appellant's appearance is different. See note 5 and accompanying text, *supra.*

ness holding in this case. It is also noteworthy that appellant fails to pursue the effort to suppress the photo identification. Thus for our purposes the reliability of Ms. Kuczynska's identification is further enhanced because there is no probability of an irreparable misidentification. *See, e.g., West v. United States,* 866 A.2d 74, 82–83 (D.C.2005).

It is FURTHER ORDERED that the concurring opinion is withdrawn. It is

FURTHER ORDERED that appellant's petition for rehearing *en banc* is denied.