*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CO-746

BRIAN LAMONT COPELAND, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF1-3817-08)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued January 6, 2015                    Decided March 12, 2015)

*Jenifer Wicks* for appellant.

*Elizabeth H. Danello*, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *T. Anthony Quinn*, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, FISHER, *Associate Judge*, and FERREN, *Senior Judge*.

FISHER, *Associate Judge*: A jury convicted appellant Brian Copeland of one count of first-degree sexual abuse with force.[1] Appellant later filed a motion for

---

[1] D.C. Code § 22-3002 (a)(1) (2001).

relief under D.C. Code § 23-110 (2001), alleging that he was denied the effective assistance of counsel. Judge Epstein denied the motion without a hearing.[2] Because appellant failed to show that he suffered prejudice from counsel's allegedly deficient performance, we affirm.

## I.    Background

On April 22, 2008, appellant was charged by indictment with one count of first-degree sexual abuse. He was found guilty after a jury trial, and his conviction was affirmed in an unpublished memorandum opinion. *Copeland v. United States*, No. 08-CF-1610, Mem. Op. & J. (D.C. Mar. 15, 2011). On September 26, 2011, appellant, represented by new counsel, filed a motion for relief under D.C. Code § 23-110. The motion contended that appellant was denied the effective assistance of counsel because his trial attorney performed deficiently during jury selection.

Jury selection proceeded in the following manner. After the potential jurors were sworn, the trial court asked them a series of yes-or-no questions pertinent to the case. This inquiry occurred on the record in an open courtroom. The jurors

---

[2] Judge Boasberg, who presided over appellant's trial, had been appointed to the United States District Court. Judge Epstein was assigned to decide this § 23-110 motion and other matters previously assigned to Judge Boasberg.

were instructed to write on an index card the number of any question to which they had an affirmative answer. The court then turned on the "husher"[3] and brought each individual member of the venire to the bench to discuss his or her responses. Defense counsel participated in the *voir dire* at sidebar, but appellant did not.

During the individual *voir dire*, the court struck twenty-three jurors for cause and denied defense counsel's request to strike an additional four jurors. Following *voir dire*, the parties exercised peremptory challenges on seventeen jurors and one alternate.[4]

## II.    Standard of Review

"'We review the trial court's denial of appellant's D.C. Code § 23-110 motion without a hearing for an abuse of discretion.'" *Patterson v. United States*, 37 A.3d 230, 243, *amended on reh'g*, 56 A.3d 1152 (D.C. 2012) (per curiam) (quoting *Freeman v. United States*, 971 A.2d 188, 201 (D.C. 2009)). "'When a

---

[3] "A 'husher' is a mechanical, white noise device intended to foster the confidentiality of conversations at the bench . . . ." *Barrows v. United States*, 15 A.3d 673, 681 n.13 (D.C. 2011).

[4] Appellant exhausted his ten peremptory challenges. *See* Super. Ct. Crim. R. 24 (b). He "passed" when challenges were exercised against the alternates.

defendant in a § 23-110 motion raises a claim of ineffective assistance of counsel, there is a presumption that the trial court should conduct a hearing.'" *Jones v. United States*, 918 A.2d 389, 402-03 (D.C. 2007) (quoting *Lane v. United States*, 737 A.2d 541, 548 (D.C. 1999)). However, "[w]here the existing record provides an adequate basis for disposing of the motion, the trial court may rule on the motion without holding an evidentiary hearing." *Ready v. United States*, 620 A.2d 233, 234 (D.C. 1993).

"'An appellant alleging the constitutional ineffectiveness of his trial counsel must demonstrate both deficient performance and prejudice in order to merit relief under D.C. Code § 23-110.'" *Patterson*, 37 A.3d at 243 (quoting *Freeman*, 971 A.2d at 201). In other words, appellant must establish (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *see also Jones*, 918 A.2d at 402.

## III.    Analysis

## A.     Right to Be Present

Appellant primarily contends that his trial counsel was ineffective because she failed to inform him of his right to be present at the bench during the *voir dire* of individual jurors.  Super. Ct. Crim. R. 43 (a) provides, in pertinent part, that "[t]he defendant shall be present . . . at every stage of the trial including the impaneling of the jury . . . ."  "A defendant's Rule 43 (a) rights derive from his constitutional rights to be present at his own criminal proceedings under the Fifth and Sixth Amendments." *Hager v. United States*, 79 A.3d 296, 301 (D.C. 2013).

Rule 43 (a) encompasses "the right of the defendant to be present, upon request, at the bench as voir dire is proceeding." *Id.*  His presence during these colloquies enables the defendant to assist his lawyer in effectively exercising peremptory strikes and challenges for cause. *Kleinbart v. United States*, 553 A.2d 1236, 1239 (D.C. 1989).  This is an important right, to be sure, but a defendant must claim it in order to enjoy it.  Indeed, defendants often choose not to invoke the right for fear that their close physical proximity will make potential jurors uncomfortable. *See id.* at 1242 (reporting that the right to be present at bench *voir dire* is "rarely invoked" because "the defendant's presence at the bench inhibits eliciting candid answers from the prospective jurors" and because

exercising the right "may be prejudicial to the defendant's personal interest") (Gallagher, J., dissenting).

Even when a defendant wishes to exercise the right, the failure "to make a timely and adequate request for his or her presence at the bench where voir dire is being conducted . . . constitutes a waiver of that right and forecloses the opportunity to be heard on appeal." *Hager*, 79 A.3d at 301 (internal quotation marks omitted).  In this case, appellant, allegedly not informed by counsel of his right, made no request to be present at the bench during individual *voir dire*, nor did he object to the manner in which this portion of jury selection was conducted.

We will assume for the purposes of argument that counsel's performance was deficient, but agree with the motion judge's finding that appellant failed to show that he was prejudiced. *See Brown v. United States*, 934 A.2d 930, 943 (D.C. 2007) ("The reviewing court need not address both prongs of the *Strickland* test if appellant does not meet the burden of one or the other showing.").[5]  In his post-

---

[5] Judge Epstein also found that trial counsel did not perform deficiently, but that finding rested in part on the mistaken belief that appellant had not submitted an affidavit providing evidence of deficient performance.  Because we base our decision solely on appellant's failure to satisfy the prejudice prong of *Strickland*, and appellant made no attempt to demonstrate prejudice in his affidavit, the motion judge's oversight has no impact on our decision. *See Brown*, 934 A.2d at 943.

trial affidavit, appellant did not claim that he would have exercised his right to be present at the bench during individual *voir dire*. *See Strozier v. United States*, 991 A.2d 778, 786 (D.C. 2010) (rejecting ineffective-assistance claim for failure to provide affidavit showing prejudice). Furthermore, even with the benefit of a transcript, he has not asserted that his counsel should have conducted *voir dire* differently or that he would have urged her to strike any other jurors, either peremptorily or for cause, if he had been present at the bench. *Cf. United States v. Rolle*, 204 F.3d 133, 140 (4th Cir. 2000) (on plain error review, considering whether a defendant who was excluded from *voir dire* must, to show actual prejudice, demonstrate either "that the verdict would have been different," or "that the jury might have been constituted in a meaningfully different way," but declining to choose between the standards because defendant could not make the lesser showing). Appellant therefore has not shown that he was prejudiced by his counsel's alleged failure to discuss with him his right to be present at the bench during individual *voir dire*.

### B. Right to a Public Trial

The failure of a defendant to prove prejudice is ordinarily enough to dispose of an ineffective-assistance claim. *See Brown*, 934 A.2d at 943. Appellant

contends that he should be relieved of this burden, however, because the trial court effectively closed a portion of *voir dire* to the public when it questioned prospective jurors at the bench with the "husher" on. He argues that this procedure violated his Sixth Amendment right to a public trial because members of the audience were not able to hear the discussion at the bench. Appellant also argues that, under this court's decision in *Littlejohn v. United States*, 73 A.3d 1034 (D.C. 2013), a violation of the right to a public trial is structural error and *Strickland* prejudice is presumed.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. The Supreme Court has deemed it "well settled" that the right to a public trial extends to jury *voir dire*. *Presley v. Georgia*, 558 U.S. 209, 213 (2010); *see also Barrows v. United States*, 15 A.3d 673, 679 (D.C. 2011) (discussing *Presley*). A trial court must make specific findings on the record before it may exclude members of the public from jury selection. *Barrows*, 15 A.3d at 679 (citing *Waller v. Georgia*, 467 U.S. 39, 48 (1984)).

In *Littlejohn*, hostility arose between the defendant's supporters and the victim's supporters, apparently causing "a huge melee in front of the courthouse."

73 A.3d at 1036 (internal quotation marks omitted). The trial court staggered the departure times of the two groups to minimize their contact with one another inside and around the courthouse, ordering the defendant's supporters to leave about forty minutes before the end of each trial day while allowing the victim's supporters to stay. *Id.* On direct appeal, we affirmed the defendant's conviction, holding that his attorney had waived any objection to the closure of the courtroom to his supporters because counsel "actively supported (and may even have proposed) the concept of staggering the departure times of the two groups in order to minimize the risk of a fracas." *Id.* at 1037 (internal quotation marks omitted).

While his appeal was still pending, Littlejohn filed a § 23-110 motion claiming he had been denied the effective assistance of counsel because his right to a public trial was violated when his supporters were excluded from the courtroom. *Id.* at 1037. This court held that if the courtroom is closed in violation of the defendant's public trial right, and trial counsel's waiver of that right constitutes deficient performance, "no further showing of prejudice is required" to obtain relief on a claim of ineffective assistance of counsel. *Id.* at 1044. In doing so, we said that the violation of the right to a public trial is a structural error, or one that has "per se prejudicial impact" because its "precise effects are unmeasurable." *Id.* at 1043 (internal quotation marks omitted). The court concluded that prejudice

under *Strickland* is presumed "when counsel's deficient performance causes a structural error." *Id.* The case was remanded for an evidentiary hearing to determine whether the defendant's counsel had performed deficiently. *Id.* at 1044.

We decline to extend the holding in *Littlejohn* to the circumstances presented here. Even when the defendant has requested and been denied the right to be present at the bench during *voir dire*, this court has rejected arguments for *per se* reversal. *See Young v. United States*, 478 A.2d 287, 290 (D.C. 1984); *Robinson v. United States*, 448 A.2d 853, 856 (D.C. 1982). Instead, "we are wedded to examining the cases on an ad hoc basis." *Robinson*, 448 A.2d at 856. We have therefore consistently reviewed a trial court's decision to exclude the defendant from the bench during individual *voir dire*, despite a timely request, under the harmless constitutional error standard of *Chapman v. California*, 386 U.S. 18 (1967). *E.g.*, *Hager*, 79 A.3d at 302; *Kleinbart*, 553 A.2d at 1240; *Gary v. United States*, 499 A.2d 815, 835 (D.C. 1985) (en banc). Such case-by-case review is incompatible with the concept of structural error, and the Supreme Court's decision in *Presley* has neither explicitly nor implicitly overruled our prior decisions rejecting a rule of *per se* reversal.

Moreover, we are not persuaded by the argument that appellant's right to a public trial was violated by the procedures used during the selection of his jury. No one objected to conducting a portion of *voir dire* at the bench. The courtroom was not closed, no one was excluded from observing *voir dire*, and a transcript of the proceeding is available. Appellant cites no authority, and we can find none, holding that the practice of conducting a limited amount of individual *voir dire* at the bench with a "husher" on violates a defendant's right to a public trial.[6] Instead, the cases discuss the closure (or partial closure) of a proceeding caused by excluding one or more members of the public from the courtroom during *voir dire*, *see Presley*, 558 U.S. at 210; *Barrows*, 15 A.3d at 676, or by moving portions of jury selection from the courtroom to a location not observable by the public, such as a jury room, *see Williams v. United States*, 51 A.3d 1273, 1282-84 (D.C. 2012) (conducting portion of *voir dire* in jury room violated Sixth Amendment, but defendant, who was present in the jury room, was not entitled to relief under plain error review).

---

[6] Courts in this jurisdiction have, for many years, "usually conduct[ed] individual *voir dire* at the bench with the 'husher' activated." *Williams v. United States*, 51 A.3d 1273, 1284 (D.C. 2012); *see also Barrows*, 15 A.3d at 681 (denying defendant relief under plain error review for excluding members of the public from the courtroom during *voir dire* and noting that "given the (unobjected-to) use of the husher during the individual juror interviews, we cannot say that allowing the courtroom to remain open during the relatively short *voir dire* would have contributed appreciably to" the goals of the right to a public trial).

The lack of authority supporting appellant's argument is unsurprising given the purposes of the right to a public trial. Criminal trials are open to the public "primarily 'for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.'" *Littlejohn*, 73 A.3d at 1039 (quoting *Tinsley v. United States*, 868 A.2d 867, 873 (D.C. 2005)). "[P]ublic proceedings [also] vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct by jurors fairly and openly selected." *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 509 (1984). "The undoubted value of an open courtroom is that it 'gives assurance that established procedures are being followed and that deviations will become known' and thereby 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" *Barrows*, 15 A.3d at 681 (quoting *Press-Enter.*, 464 U.S. at 508).

Sometimes, however, there are "competing considerations," *Boone v. United States*, 483 A.2d 1135, 1141 (D.C. 1984) (en banc), which justify limited questioning of jurors at the bench. The practice was adopted in this jurisdiction

over forty years ago to prevent a potential juror's answers to *voir dire* questions from prejudicing other members of the venire. *See Boone*, 483 A.2d at 1141.[7]

Such questions might include prior contact with the criminal justice system, knowledge of the crime, or exposure to pretrial publicity. The procedure is also designed, in part, to protect a juror's privacy and to encourage potential jurors to be forthright when they might otherwise be reluctant to discuss personal experiences or private matters.[8]

---

[7] The practice of holding individual *voir dire* at the bench has been traced to the D.C. Circuit's decision in *United States v. Ridley*, 134 U.S. App. D.C. 79, 412 F.2d 1126 (1969). *See Boone*, 483 A.2d at 1141 (citing *United States v. Washington*, 227 U.S. App. D.C. 184, 191, 705 F.2d 489, 496 (1983)). In *Ridley*, the defendant argued that he was prejudiced because the prospective jurors were examined openly about their past experiences as victims of crime. 134 U.S. App. D.C. at 81, 412 F.2d at 1128. The *Ridley* court affirmed the defendant's conviction, but suggested that trial courts explore alternative ways to conduct *voir dire* to prevent possible prejudice that could arise if prospective jurors heard one another's answers. *Id.* The D.C. Circuit later approved of the practice whereby prospective jurors who indicate that they have had prior contact with the criminal justice system are examined at the bench out of the hearing of the rest of the venire. *See Washington*, 227 U.S. App. D.C. at 191, 705 F.2d at 496 (citing *United States v. Caldwell*, 178 U.S. App. D.C. 20, 32 n.42, 543 F.2d 1333, 1345 n.42 (1974), and *United States v. Bryant*, 153 U.S. App. D.C. 72, 76-77, 471 F.2d 1040, 1044-45 (1972)).

[8] Our reasoning is supported by the American Bar Association standards for *voir dire*, which recognize that "[j]uror interest in privacy must be balanced against party and public interest in court proceedings." ABA Standards for Criminal Justice, *Principles for Juries and Jury Trials* § 7 (A) (2005), *available at* http://www.americanbar.org/content/dam/aba/migrated/2011_build/american_jury/principles.authcheckdam.pdf. They recommend that "[j]urors should be examined outside the presence of other jurors on sensitive matters or prior exposure to

(continued…)

When questioning occurs at the bench, the public can still observe the proceedings and, as in this case, hear the general questions posed to the jury panel. *See Commonwealth v. Cohen*, 921 N.E.2d 906, 925 (Mass. 2010) ("Even though the public cannot hear what is being said [during individual *voir dire* at sidebar], the ability to observe itself furthers the values that the public trial right is designed to protect."). Individual *voir dire* at the bench is recorded, and a transcript can be made available.

We hold that the long-standing practice in this jurisdiction of conducting individual *voir dire* at the bench, within the view but outside the hearing of the

---

(…continued)
potentially prejudicial material." ABA Standards for Criminal Justice, *Discovery and Trial by Jury* § 15-2.4 (e) (3d ed. 1996). "Sensitive matters are those matters which might be potentially embarrassing or intrusive into the juror's private life, feelings or beliefs, or those matters which, if discussed in the presence of the jury panel, might prejudice or influence the panel by exposing other potential jurors to improper information." *Id.* § 15-2.4 (e)(1). A trial court should also "consider juror privacy concerns when choosing the method of voir dire (open questioning in court, private questioning at the bench, or a jury questionnaire) to be used to inquire about sensitive matters." ABA Standards for Criminal Justice, *Principles for Juries and Jury Trials* § 7 (A)(5).

public, is not a structural error.[9] Our holding in *Littlejohn* does not excuse appellant from satisfying the prejudice prong of the *Strickland* standard.

### IV. Conclusion

Appellant's failure to show prejudice is fatal to his claim of ineffective assistance of counsel. The judgment of the Superior Court is hereby

*Affirmed.*

---

[9] Appellant also contends that defense counsel was ineffective because she declined the court's offer to dismiss thirty-two prospective jurors who came into the courtroom before appellant was present. The jurors were removed from the courtroom, but defense counsel suggested that when they reentered and saw appellant seated at counsel table, they would infer that he had come from the holding cell behind the courtroom. After defense counsel raised this possibility, the trial court explained, "I don't think it's terribly prejudicial," and commented that the jurors "may not put two and two together." Nevertheless, the court offered to replace the thirty-two jurors. Counsel declined the offer after conferring with her client. We therefore do not consider this claim of ineffective assistance because appellant "affirmatively acquiesced" to retaining the jurors. *King v. United States*, 75 A.3d 113, 117 (D.C. 2013); *see also id.* ("We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal." (internal quotation marks omitted)). Moreover, any claim of prejudice attributable to counsel's decision is entirely speculative.